# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH MARTINEZ, | Case No. 1:18-cv-00836-SAB |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 20, 23, 24) |
| Defendant. | |

## I.

## INTRODUCTION

Deborah Martinez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from chest pain, asthma, diabetes, carpal tunnel syndrome, degenerative disc disease of the lumbar spine, left shoulder and hip arthritis, migraine headaches, and left wrist pain. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 11, 12.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on May 29, 2014, and a Title XVI application for supplemental security income on May 30, 2014.  (AR 95, 96.)  Plaintiff's applications were initially denied on October 9, 2014, and denied upon reconsideration on March 6, 2015.  (AR 133-137, 141-146.)  Plaintiff requested and received a hearing before Administrative Law Judge Vincent A. Misenti ("the ALJ").  Plaintiff appeared for a hearing on January 20, 2017.  (AR 33-68.)  On April 10, 2017, the ALJ found that Plaintiff was not disabled.  (AR 12-27.)  The Appeals Council denied Plaintiff's request for review on April 16, 2018.  (AR 1-3.)

### A.      Hearing Testimony

Plaintiff appeared and testified at a video hearing on January 20, 2017 with the assistance of counsel.  (AR 36-57.)  At the hearing, Plaintiff moved to amend her alleged onset date to April 22, 2014.  (AR 36.)  Plaintiff received her GED.  (AR 39.)  She is divorced.  (AR 37.)  Plaintiff lives with her daughter and son-in-law; her son and his three children, ages 13, 11 and age unknown; and three grandchildren, ages 14, 9, and 6.  (AR 37-38.)  Plaintiff has guardianship of her grandsons who are 9 and 6 and her 14 year old granddaughter is in foster-care.  (AR 37-38.)

Plaintiff is 5' 3" tall and weighs 170 pounds.  (AR 36.)  Her weight generally fluctuates between 160 to 170 pounds.  (AR 37.)  Plaintiff is right handed.  (AR 37.)  She has her driver's license and takes her granddaughter to school in Easton which is a fifteen minute drive there and back.  (AR 39.)  Plaintiff drives about forty-five minutes five days a week.  (AR 39.)

Plaintiff worked after her alleged onset date taking care of her grandchildren over the summer while they were out of school.  (AR 39.)  She would pick them up and keep them until her daughter got off work.  (AR 39.)  The state paid her $300 to $400 per month.  (AR 40.)

Plaintiff is unable to work due to her left shoulder, back, left hip, and right knee.  (AR 40.)  Plaintiff's left shoulder has gotten a little better but she is not able to raise it up.  (AR 41.)  Moving her arm up or down sends shooting pains through her arm.  (AR 41.)  Her arm will go

numb like it is asleep and she cannot move it. (AR 41.) She has no strength in her left arm and hand. (AR 41.) She cannot put her arm behind her back without it hurting. (AR 41.) She has to have someone help her to lift and carry things, like a laundry basket. (AR 41.) Plaintiff takes Norco and Tramadol for her pain. (AR 41.) She was recently prescribed Meloxicam. (AR 41.) She takes her medication daily. (AR 42.) When she takes her medication her pain is about 4/10. (AR 42.)

Plaintiff did have physical therapy for her shoulder which helped a little bit. (AR 42.) She got some mobility back. (AR 42.) The physical therapist gave her some exercises to do to keep her arm from going back to where it was. (AR 42.) Plaintiff did not have any injections in her shoulder. (AR 42.)

Plaintiff has arthritis down to where her bones connect to her hip. (AR 43.) The pain shoots from her back down into her legs. (AR 43.) Plaintiff can only sit for a while and then she has to move and shift positions. (AR 43.) Plaintiff had injections in June or July of the prior year. (AR 43.) They cauterized the nerves in her back. (AR 43.) The injections did not really help. (AR 43.) They reduced her pain to a six but she still has pain in her back. (AR 43.) She received more injections and an epidural. (AR 43.) At the time that she received the epidural, her pain was about an 8 or 9 and it was brought down to a 7. (AR 44.) She had the epidural in October or November of 2016. (AR 44.) On a bad day, Plaintiff's pain medication will bring her pain down to a 5. (AR 44.) Plaintiff had physical therapy for her back. (AR 44.) The physical therapy did not help but increased her pain. (AR 44-45.) They told her it would initially increase her pain but would help in the long run. (AR 45.) She only did one session. (AR 45.)

Plaintiff thinks her left hip condition is related to her back. (AR 45.) Her hip will give out on her and she has tingling down her legs. (AR 45.) Plaintiff falls a lot from walking. (AR 45.) If she is walking a long time, her hip will give out and she will fall. (AR 45.) She gets fidgety if she sits too much to keep the pain minimal. (AR 46.) Plaintiff uses a walker to make sure she does not fall and hurt herself. (AR 45.) She used the walker to come to the hearing. (AR 45.) It was prescribed in November and she got it in December 2016. (AR 45-46.)

Plaintiff has also been prescribed a brace for her left and right knees and a back brace. (AR 46.) She will also get muscle spasms and cramps in her legs, more in the calves. (AR 54.) She has neuropathy in her feet and legs. (AR 55.)

Plaintiff's right knee will pop when she is walking. (AR 46.) It will swell and she will wrap it in an ace bandage to get the swelling down. (AR 46.) Her right knee has been acting up for two to three years. (AR 47.) She told her doctors about it and they told her to ice it for the swelling. (AR 47.) Her right knee is really weak when she walks and she will limp on it. (AR 47.)

Plaintiff runs out of her medication for her diabetes and then she will have to wait for the doctor to fill the prescription again. (AR 55.) Her blood sugar levels run between 200 to 250. (AR 55.) Plaintiff stays on the diet the doctor's prescribed but she will eat a piece of cake or ice cream once in a while for a birthday. (AR 55.)

Plaintiff was hospitalized for a few days the prior year with a heart issue. (AR 56.) She was having palpations. (AR 56.) They gave her Metoprolol for her heart and she has taken Nitroglycerin one time since she was released from the hospital. (AR 56.)

Plaintiff will get migraine headaches about once a week. (AR 57.) They last anywhere between an hour and twenty-four hours. (AR 57.) She has had one headache in the last year that lasted twenty-four hours. (AR 57.) The majority of her headaches last about two hours. (AR 57.) When she has a headache, she will go to her room, turn everything off, and lay there until it eases. (AR 57.) She also takes her medicine for the migraines. (AR 58.)

Quite a few years ago, Plaintiff had carpal tunnel with her hands. (AR 52.) She has trigger-finger and her hands lock up and she cannot open them. (AR 52.) Her hands are both about the same. (AR 52.) All four of her fingers will lock up. (AR 52.) In the morning her fingers are moveable, but by noon they are hurting badly. (AR 52.) The doctor told her they will do injections for the trigger finger. (AR 52.) She got injections from her primary care doctor but they did not help. (AR 53.) Her knuckles and wrist hurt and have numbness. (AR 53.) Her hand pain is about a 5. (AR 53.) If she tries to hold or carry things her hands will go numb. (AR 53.) When she puts her hand in a fist her fingers go numb. (AR 54.) Plaintiff is able to use

her hands for thirty minutes before she has to take a break. (AR 54.) She will take a break for twenty to thirty minutes before using them again. (AR 54.)

Plaintiff can sit for 15, 30, to 40 minutes. (AR 47.) She can walk at least twenty minutes. (AR 47.) She cannot walk a whole block before her leg gives out. (AR 47.) She can walk two blocks with the walker. (AR 47.) Plaintiff can lift a gallon of milk and a maximum of twenty pounds. (AR 47-48.) Plaintiff cannot reach up or out too far with her left arm. (AR 48.)

Plaintiff cooks for her grandchildren with help. (AR 48.) They take the laundry to the washer and dryer and she folds the clothes but has to pause in between. (AR 48.) Her daughter helps her cook and sometimes her son will help. (AR 48.) Her daughter and son-in-law do most of the housecleaning. (AR 48.)

Plaintiff helps her grandchildren with their homework and picks out their clothing. (AR 48.) She reads them books and then she has to lay down for a while. (AR 48.) After about an hour or so she will get up and do something else with them, whether it is homework or something they need for school. (AR 49.)

Plaintiff is teaching her daughter and son how to cook so she is cooking on a daily basis. (AR 49.) While the food is cooking, Plaintiff will go lay down. (AR 49.) They cook on their own if it is something simple like hamburgers. (AR 49.) Plaintiff will cook hamburger helper or pork chops. (AR 49.) The grandchildren do the dishes. (AR 50.) Plaintiff's daughter has been working but just turned in her thirty day notice. (AR 50.) She was working five hours a day in management. (AR 50.)

Plaintiff does the grocery shopping. (AR 50.) His son will help her push the cart. (AR 50.) She uses her walker and will sit down to figure out what they need. (AR 50.) Plaintiff did the shopping before she got her walker but it was difficult. (AR 50.) They did not get a lot of groceries. (AR 50.) They would only buy a few things and then Plaintiff would go home and lay down for an hour or so because her back pain would be really bad. (AR 51.)

On the weekends, Plaintiff will watch television and the grandkids play video games. (AR 51.) On Sundays, Plaintiff has to supervise the visits with their mother so she will sit in with them. (AR 51.) They plan activities for the weekends, like taking them to John's Incredible

1 | Pizza. (AR 51.) Her daughter and son-in-law will go with them since she cannot follow the kids

2 | around. (AR 51.) They will take them to play video games or to the zoo. (AR 51.) She has a

3 | pass to the zoo but she does not take them. (AR 51.) Most of the time she will go but does not

4 | follow them around. (AR 51.) She will sit down while they go and watch the animals. (AR 51.)

5 | She walks through the bird cage and will wait at the end so they can go through. (AR 51.)

6 | A vocational expert ("VE"), Susan D. Green, also testified at the hearing. (AR 58-67.)

7 | The VE categorized Plaintiff's past work as a billing clerk, Dictionary of Occupational Titles

8 | ("DOT") 214.362-042, SVP 4, sedentary.

9 | The VE gave a hypothetical of an individual with Plaintiff's past job who possessed a

10 | high school equivalent education; and can perform a light range of work except is limited to

11 | frequent reaching and handling with the left, non-dominant, extremity; occasional climbing of

12 | stairs, and ramps; no climbing of ropes, ladders and scaffolds; frequent balancing, stooping,

13 | kneeling, and crouching; occasional crawling; no working in loud environments; and must avoid

14 | concentrated exposure to fumes, dust, odors, gases, poorly ventilated areas, and chemicals. (AR

15 | 59.) The VE opined that this individual would be able to perform Plaintiff's past work both as

16 | actually performed and as generally performed. (AR 59-60.)

17 | The ALJ presented a second hypothetical of the same individual who was limited to

18 | occasional handling with the left hand and all reaching on the left was occasional. (AR 60.) The

19 | VE opined that this individual could perform Plaintiff's past work. (AR 60.)

20 | The ALJ proffered a third hypothetical of the same individual but the individual could sit

21 | for no more than fifteen minutes at a time with a thirty minute break before resuming sitting and

22 | stand for no more than twenty minutes with a sixty minute break. (AR 61.) The VE opined

23 | there would be no work for this individual. (AR 61.)

24 | The VE opined that this testimony was consistent with the DOT. (AR 61.)

25 | Plaintiff's counsel asked what the handling requirement would be for Plaintiff's past

26 | relevant work. (AR 61.) The VE opined that it was frequent. (AR 61.) Counsel asked if the

27 | limitation was occasional how the individual would be able to perform the past relevant work.

28 | (AR 61.) The VE opined that because Plaintiff's right hand is dominant she would be using her

right hand frequently. (AR 61.) Counsel asked if the DOT required the use of both hands or only the more dominant hand. (AR 62.) The VE stated that the DOT does not specify, it just says frequently. (AR 62.) The VE opined that Plaintiff could use her dominant hand frequently and her nondominant hand occasionally. (AR 62.) Her opinion was based on her experience rehabbing clients and placing them in positions since 1982. (AR 62.)

Counsel asked what kind of job would allow the frequent use of the dominant hand and the occasional use of the nondominant hand. (AR 62.) The VE opined that Plaintiff's past job of billing clerk would allow such use. (AR 62.) Other jobs that would allow such use would be information clerk or ticket taker. (AR 62.) The ALJ noted that they were not going into other jobs. (AR 62.) The ALJ asked the VE if the job could be performed in an office environment as long as the right hand was dominant and that non-dominant hand only handled occasionally. (AR 63.) The VE affirmed that was correct. (AR 63.) Counsel asked which industries would allow such work, legal, medical, farm equipment. (AR 63.) The VE opined that all of the above industries would allow for such limitations. (AR 63.)

Plaintiff's counsel presented a hypothetical of the same individual as the first hypothetical that was limited to occasional reaching in all directions with the left upper extremity and occasional feeling and fingering. (AR 64.) The VE opined that the individual would be able to perform Plaintiff's past work. (AR 64.)

Counsel asked if there was any handling, fingering, and feeling limitation that would preclude Plaintiff's past work. (AR 64.) Specifically, would a limitation to rare preclude past work? (AR 64.) The ALJ noted that rare is not listed in the DOT. (AR 64.) Counsel asked if a limitation to fingering, handling and feeling less than ten percent of the time with the non-dominant extremity would preclude past relevant work. (AR 65.) The VE opined that this individual would not be able to perform Plaintiff's past relevant work. (AR 65.)

Counsel offered the last hypothetical where the individual was limited to sitting no more than four hours in an eight-hour workday; standing and walking no more than four hours; had to use a walker for both standing and walking; had to shift positions every 45 minutes; but could continue to stay on task. (AR 65.) The VE opined that this individual could not perform

Plaintiff's past relevant work.  (AR 66.)

Plaintiff's counsel asked the VE what other kinds of work would be available at a light exertion level.  (AR 66.)  The VE confirmed as prior stated, ticket taker, information clerk, and parking lot attendant in schools.  (AR 66-67.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017.

- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of April 22, 2014.

- Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, left shoulder and hip arthritis, migraine headaches, and left wrist pain.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently.  She can sit, stand, or walk up to six hours each in an eight-hour workday.  She can occasionally crawl and climb ramps or stairs; never climb ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, or crouch.  She can frequently use the left upper extremity to reach and handle.  She must avoid concentrate exposure to noise, fumes, dusts, odors, and other pulmonary irritants.

- Plaintiff is capable of performing past relevant work as a billing clerk.  This work does not require the performance of work related activities precluded by Plaintiff's residual functional capacity.

- Plaintiff has not been under a disability as defined in the Social Security Act from April 22, 2014, through the date of this decision.

(AR 17-26.)

/ / /

**III.**

**LEGAL STANDARD**

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

1  Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

2  disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v.

3  Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a

4  scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

5  (internal quotations and citations omitted). "Substantial evidence is relevant evidence which,

6  considering the record as a whole, a reasonable person might accept as adequate to support a

7  conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

8  Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

9      "[A] reviewing court must consider the entire record as a whole and may not affirm

10  simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting

11  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not

12  this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

13  for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

14  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

15  upheld.").

16                                    **IV.**

17                        **DISCUSSION AND ANALYSIS**

18      Plaintiff argues that the ALJ erred by failing to evaluate the impact of Plaintiff's

19  diagnosis of trigger finger on her residual functional capacity, rejecting Dr. Rios' opinion in

20  favor of his own interpretation of the clinical data, and failing to identify and resolve an apparent

21  conflict between the DOT and the VE's testimony that Plaintiff can perform her prior job as a

22  billing clerk.

23      **A.      Whether ALJ Erred in Failing to Address Trigger Finger Diagnosis**

24      Plaintiff contends that the ALJ erred by not considering her hand limitations due to her

25  trigger finger diagnosis. A diagnosis alone is not sufficient to establish a severe impairment.

26  Clowers v. Colvin, No. C13-0539-RSL, 2013 WL 5835769, at *2 (W.D. Wash. Oct. 30, 2013).

27  The claimant must show that her medically determinable impairments are severe. 20 C.F.R. §

28  404.1520(c). Here, the ALJ did address Plaintiff's hand allegations in addressing whether she

had a severe impairment.

> While the claimant has referenced a history of carpal tunnel syndrome, the undersigned finds this condition non-severe. She denied extremity weakness or numbness in the extremities on November 21, 2013 [AR 360]. Left hand grip strength was mildly reduced on December 28, 2013 [AR 357]. On March 3, 2014, the claimant had normal strength and normal musculoskeletal range of motion [AR 315]. She was able to move all extremities. On March 14, 2014, the claimant denied muscle weakness and rated her pain as 0/10 [AR 348]. On April 22, 2014, the claimant denied joint pain or swelling [AR 343]. On September 15, 2014, Dr. Rios noted that the claimant's fine and gross manipulation were preserved [AR 381]. The claimant had no joint effusion or focal neurologic deficit on May 27, 2015 [AR 691]. She reported a history of bilateral carpal tunnel release. She was in no distress. Upon musculoskeletal examination she had normal range of motion and normal strength with no tenderness swelling deformity or focal neurological deficit [AR 706]. On September 3, 2016, the claimant's extremities had normal range of motion and normal strength [AR 826] and tone [AR 821]. She had no neurological deficits with no focal motor or sensory deficits Exhibit [AR 805-810]. The claimant made no mention of hand pain on December 7, 2016 [AR 888]. There is little if any evidence to suggest that she has any limitation in this regard. The undersigned therefore finds this condition non-severe.

(AR 19.)

However, the ALJ did not consider Plaintiff's allegations that she was unable to use her hands due to her trigger finger and there is objective evidence in the record demonstrating that Plaintiff suffered from the impairment. On August 19, 2015, plaintiff was diagnosed with trigger finger and her third and fourth digits of her right hand were locked in flexed position. (AR 594, 599.) Although later upper extremity examination was normal, Plaintiff did receive injections for her trigger finger. (AR 594, 608, 611, 617, 625.) While there is no evidence in the record that Plaintiff's trigger finger would meet the duration requirements, the ALJ was "required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008). The ALJ erred by failing to consider Plaintiff's trigger finger.

### B.    Physician Testimony

Plaintiff contends that the ALJ erred by rejecting the opinion of Dr. Rios that Plaintiff was limited to occasional use of her left hand. Plaintiff argues that the ALJ rejected Dr. Rios' opinion in favor of his own lay assessment of the record. Plaintiff contends that the record is replete with her complaints of continued wrist pain which supports Dr. Rios' opinion.

Defendant counters that substantial evidence supports the ALJ's evaluation of the medical evidence, including the manipulative limitations due to her hand and upper extremity impairments. While recognizing that Plaintiff has been diagnosed with trigger finger and an impairment related to her left wrist, Defendant argues that the existence of a disorder is not enough, there must be evidence of the impairment's disabling severity. Defendant contends that Plaintiff has not presented any objective medical evidence that her ability to move her fingers or upper extremities was impaired. Defendant argues that Plaintiff's subjective statements are insufficient to meet her burden.

Plaintiff argues that Defendant is incorrect in asserting that the ALJ properly evaluated the medical evidence because the opinion does not address her trigger finger diagnosis and findings. Plaintiff contends that she put forth objective evidence of her trigger finger including that her fingers were locked in position. Plaintiff argues that because the ALJ failed to discuss her trigger finger, Defendant cannot put forth reasons that were not relied on by the ALJ.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(3)). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

1.    Dr. Rios' Opinion

Plaintiff contends that the ALJ erred in rejecting Dr. Rios' opinion that she was limited to occasional reaching and handling with her left upper extremity. Similar to a treating physician, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected

for specific and legitimate reasons that are supported by substantial evidence in the record. Lester, 81 F.3d at 831.

The ALJ considered the opinion of Dr. Rios who examined Plaintiff on September 15, 2014. (AR 23, 24, 25.) Plaintiff was living with her daughter and reported that she was able to drive, was independent with her activities of daily living, and was able to help with some of the household chores. (AR 378.) Dr. Rios noted that Plaintiff was in no acute distress and she walked with a slight limp. (AR 23, 378.) She was able to get on and off the examination table with minimal difficulty. (AR 378.) While Plaintiff walked with a limp favoring the right side, her station, heel/toe and tandem gait were normal and Romberg test was negative. (AR 379.) She did not need an assistive device. (AR 379.) Dr. Rios made the following general findings.

> Examination of the chest and lungs revealed no adventitious sounds, no clubbing of the fingers or cyanosis observed. Examination of the heart revealed no gallop breathing. Pedal pulses were strong without any pulse deficit. No neck vein engorgement or edema observed.
>
> Examination of the left shoulder showed full range of motion although there is tenderness at the acromioclavicular joint and she reports pain at end range of motion. No impingement sign observed. Examination of the left hip also revealed tenderness along the left trochanteric region. She has full range of motion but she describes pain at end range of motion. Examination of the back showed good lumbar flexion and extension mobility but there is tenderness along the lumbar spine without any accompanying spasms.
>
> Examination of the distal extremities revealed no ischemic changes. No evidence of chronic foot ulcerations. Equilibrium and balance is preserved.

(AR 380.)

Dr. Rios also made the following findings. Motor strength is 5/5 throughout the upper and lower extremities with normal grip strength 5/5. (AR 380.) Muscle bulk and tone is normal without any atrophy or spasms. (AR 380.) Sensory revealed altered perception to fine touch in a stocking pattern distribution. (AR 380.) Deep tendon reflexes are 2+ in the bilateral upper and lower extremities. (AR 380.) Dr. Rios also noted that Plaintiff's fine and gross finger manipulations were preserved. (AR 381.) He noted that Plaintiff has arthritis with pain on the left hip and left shoulder region, but range of motion is preserved with pain at the end range of motion. (AR 381.)

Dr. Rios opined that Plaintiff can stand and walk up to six hours, sit up to six hours, and

lift or carry up to 20 pounds occasionally and 10 pounds frequently.  (AR 25, 381.)  She can occasionally climb and frequently balance, stoop, kneel, crouch, or crawl.  (AR 25, 381.)  Plaintiff had no limitations with her right upper extremity.  (AR 381.)  With her left upper extremity, she can occasionally reach, handle, finger, and feel.  (AR 25, 381.)  She should be precluded from working around chemicals, dust, fumes, and gases.  (AR 25, 381.)

The ALJ gave significant weight to Dr. Rios' opinion, but did not adopt the occasional reaching, fingering, and feeling as the subsequent treatment evidence did not indicate specific findings that would warrant these limitations.  (AR 25.)

While Plaintiff argues that her complaints of pain support that she continued to have limitations, her pain complaints are not objective medical findings.  As the ALJ noted in his opinion, review of the subsequent medical record demonstrates that Plaintiff was referred to pain management on June 28, 2014, prior to her evaluation by Dr. Rios.  (AR 23, 331-335.)  Physical examination on this date was unremarkable.  (AR 333.)

Plaintiff participated in physical therapy for lumbosacral spondylosis from January 22, 2015 though February 27, 2015.  (AR 23, 664-671.)

On May 27, 2015, Plaintiff was seen in the emergency room for dizziness, fever and a cough.  (AR 704.)  Plaintiff was noted to be in no distress and denied back pain.  (AR 23, 705.)  Her back was nontender with normal range of motion.  (AR 23, 706.)  Musculoskeletal examination revealed normal range of motion and normal strength with no tenderness, swelling deformity or focal neurological deficit.  (AR 23, 706.)

Plaintiff participated in physical therapy for her back and left hip pain from August 17, 2015 to February 9, 2016.  (AR 23, 639-653.)  On discharge, she reported a fifty percent decrease in her symptoms.  (AR 23, 639.)  She was seen for back pain on March 19, 2016, and denied back or shoulder pain, loss of balance and coordination, and difficulty walking or moving her arms.  (AR 23, 506, 507.)  She also denied having fallen in the last year.  (AR 23, 506.)  She had reduced lumbar range of motion and straight leg raising was positive on the right.  (AR 23, 508-509.)  She had no tenderness to palpation of the lumber spine and the impression was lumbar spondylosis, pain of left sacroiliac joint, chronic pain syndrome, and neuropathy.  (AR

23, 509.)

On May 23, 2016, Plaintiff reported back pain and tenderness to palpation was noted. (AR 23, 429, 432.) Sensation was normal and straight leg raising was positive on the right side. (AR 23, 431-432.) Plaintiff had tenderness to palpation of the lumbar spine. (AR 23, 432.)

Plaintiff was seen for low back pain on June 24, 2016, and reported pain of 7/10 with pain medication and 10/10 without. (AR 23, 506.) She denied gait abnormality, painful joints or sciatica, or loss of strength. (AR 23, 506-507.) Tenderness on palpation was noted, but sensation was normal. (AR 23, 508-509.)

On September 3, 2016, Plaintiff was seen in the emergency room and denied back pain or a gait problem. (AR 865.) She was independent in mobility, and extremity examination revealed normal range of motion and normal strength and tone. (AR 23, 25, 810, 814.) She had no neurological deficits with no focal motor or sensory deficits. (AR 24, 805.)

Specifically, as to Plaintiff's hand and wrist allegations. On November 20, 2014, Plaintiff complained that she had been experiencing wrist pain for one month. (AR 384.) She was found to have limited range of motion and swelling of her left wrist. (AR 388.) Although there are notations that Plaintiff was being seen for back, hip, and wrist pain, until January 2015, there are no further wrist or hand findings in the record during these visits. (AR 409, 500, 512-513, 670.

On August 19, 2015, Plaintiff complained that she was having trouble with her right hand and it is noted that her third and fourth digits were locked in a flexed position. (AR 594, 599.) Plaintiff was diagnosed with trigger finger and received an injection. (AR 594, 599.) Plaintiff received further injections, but at each visit it is noted that her extremity examination was normal. (AR 599, 617, 625, 635.) Similarly, on November 17, 2015, and April 22, 2016, there are notations that Plaintiff is being seen for wrist pain but there are no findings on examination of the upper extremities. (AR 434-437, 462-465.)

While the ALJ rejected the reaching and handling limitations opined by Dr. Rios because they were inconsistent with the generally normal findings in the medical record, the ALJ did not consider that Plaintiff had been diagnosed with trigger finger in August 2015, or the treatment

1  that she was receiving.  Accordingly, substantial evidence does not support the weight provided

2  to Dr. Rios' reaching and handling limitations.

3          2.     <u>Agency Physician Opinion</u>

4         The Court finds no merit to Plaintiff's argument that the ALJ substituted his opinion for

5  those of the doctors.  While no treating physician opined as to Plaintiff's functional abilities, the

6  ALJ did consider the opinions of the consultative examiner and the two agency physicians who

7  reviewed the record and opined as to Plaintiff's residual functional capacity.  Here, the ALJ gave

8  significant weight to the opinion of Dr. De La Rosa who opined that Plaintiff was able to

9  perform light work, finding that it was consistent with the treatment record as a whole.  (AR 26.)

10         The contrary opinion of a non-examining expert is not sufficient by itself to constitute a

11  specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it

12  may constitute substantial evidence when it is consistent with other independent evidence in the

13  record."  <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  "The weight afforded a

14  non-examining physician's testimony depends 'on the degree to which [he] provide[s]

15  supporting explanations for [his] opinions.' "  <u>Garrison</u>, 759 F.3d at 1012 (citations omitted).

16         Dr. De La Rosa was the agency physician who reviewed the record on reconsideration on

17  February 2, 2015.  (AR 105.)  Dr. De La Rosa considered that a recent examination of Plaintiff's

18  shoulder showed tenderness at the AC joint but no impingement and motor strength was normal

19  throughout with no atrophy.  (AR 105.)  Dr. De La Rosa found that the medical record supports

20  degenerative disc disease of the lumbar spine at L5-S1 with preserved lordotic curvature.  (AR

21  105.)  Plaintiff's left hip x-rays were normal and she had preserved motor strength except at a

22  recent physical therapy evaluation, but that this was subjective more than objective.  (AR 105.)

23  Plaintiff had no evidence of atrophy to support chronic weakness or disuse and her prior exam

24  was not consistent with the findings at physical therapy and they were therefore not given full

25  weight.  (AR 105.)  Dr. De La Rosa determined that Plaintiff's recent physical examinations

26  showed that she had no functional limitations in her wrist with no atrophy or weakness, and that

27  the condition did not meet the longitudinal history of twelve months to be considered a severe

28  impairment.  (AR 105.)  As relevant here, Dr. De La Rosa opined that Plaintiff was able to do

1  frequent handling and reaching due to her left wrist and shoulder pain and that she had no

2  persistent shoulder pain limitations following physical therapy.  (AR 109.)

3      However, Dr. De La Rosa's evaluation of the medical record was prior to Plaintiff

4  developing her trigger finger symptoms.  Accordingly, Dr. De La Rosa's opinion is not

5  substantial evidence to support the upper extremity limitations.

6      **C.    Claimant Testimony**

7      Plaintiff argues that since there is objective evidence to support her symptom testimony

8  regarding her trigger finger, the ALJ was required to provide clear and convincing reasons to

9  reject her testimony.

10     Defendant counters that the mere existence of a disorder is not per se severe or disabling

11  and that Plaintiff presented no evidence that her trigger finger caused the limitations that she

12  alleged.  Defendant contends that the ALJ adequately addressed Plaintiff's ability to use her

13  upper extremities and considered that Plaintiff's symptom testimony was not supported by the

14  objective medical evidence, her activities of daily living, and the physician opinions that she was

15  capable of occasionally or frequently handling.

16     In her reply brief, Plaintiff replies the ALJ was required to evaluate the effects of her

17  impairments and can only reject her symptom testimony for clear and convincing reasons.

18  Plaintiff argues that, because the ALJ wholly failed to discuss her trigger finger, the reasons

19  offered by Defendant to support the decision cannot be considered.

20     "An ALJ is not required to believe every allegation of disabling pain or other non-

21  exertional impairment."  Orn, 495 F.3d at 635 (internal punctuation and citations omitted).

22  Determining whether a claimant's testimony regarding subjective pain or symptoms is credible,

23  requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th

24  Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical

25  evidence of an underlying impairment which could reasonably be expected to produce the pain

26  or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)

27  (internal punctuation and citations omitted).  This does not require the claimant to show that her

28  impairment could be expected to cause the severity of the symptoms that are alleged, but only

that it reasonably could have caused some degree of symptoms.  Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015).  "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).  Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors.  Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . .."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).  The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible.  Brown-Hunter, 806 F.3d at 492.

Plaintiff argues that the ALJ must provide clear and convincing reasons to reject her testimony regarding her trigger finger symptoms.  However, the ALJ need not address the symptom testimony for each of Plaintiff's alleged impairments.  The question is whether the ALJ provided specific clear and convincing reasons to reject Plaintiff's symptom testimony.

The ALJ considered Plaintiff's testimony that she is prevented from working due to her left shoulder, back, hip, and knee pain.  (AR 22.)

> Even when she takes pain medication her pain is 4/10.  Injections in her spine increased her pain.  Physical therapy did not help.  She said she falls a lot when she is walking and she has a walker that was prescribed in November 2016.  She

said that she cannot sit or stand for long periods and can only walk up to two blocks using a walker.

(AR 22.) The ALJ found that Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms, but her statements regarding the intensity, persistence, and limiting effects of the symptoms was not entirely consistent with the medical evidence and other evidence in the record. (AR 22.)

> The evidence overall does not support the alleged loss of functioning. She is a 52-year old healthy looking woman who is the paid legal foster care guardian for three young children.
>
> While she claimed that she did not do much for the children other than take them to school [and] help with their homework, she unconvincingly asserted that her daughter who does not live with her comes over and helps her do everything around the house including shopping.
>
> In terms of the objective findings cardiac and musculoskeletal testing have been mostly normal, her diabetes mellitus has not resulted in any complications, her vague left shoulder pain has responded well to physical therapy and she attributes her left wrist pain to a 20-year old history of carpal tunnel syndrome Exhibits 1F 3F 5F 9F and I IF. Imaging studies have ranged from normal and to mildly and/or moderately abnormal and there is little documentation in the record to corroborate the diagnosis of arthritis Exhibits 3F 4F and I IF. The most significant imaging test revealed moderate to severe degenerative changes in the lumbar spine but she has not undergone surgery and has been managed conservatively with medication and some physical therapy in the past. She admitted that there is no etiology for her right knee pain and she has only been using a walker for one month. Her headaches occur once in a while as per testimony. Her testimony regarding frequent falls is not consistent with the record.

(AR 25.)

While Plaintiff is being paid to take care of her three grandchildren, the ALJ did not identify how her symptom testimony conflicts with her ability to care for the three children. The ALJ noted that Plaintiff stated that she did not do much for the children other than take them to school and help with their homework. The ALJ found Plaintiff's testimony that her daughter helps her do everything around the house, including shopping was not credible because her daughter does not live with her. However, accordingly to Plaintiff's testimony at the hearing, she lives with her daughter, son-in-law and son. (AR 37-38.) The ALJ's finding that Plaintiff's daughter does not live with her is not supported by the record and this is not a clear and convincing reason to reject Plaintiff's testimony. Because the ALJ did not identify the testimony that is not credible and the evidence that undermines Plaintiff's complaints, this cannot sustain

an adverse credibility finding.  Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014).

The ALJ found that Plaintiff's back symptoms have been treated conservatively with medication and physical therapy.  Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment.  Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007).  However, Plaintiff also received an occipital injection on January 6, 2015, and a lumbar block was performed on January 20, 2015.  (AR 405, 406.)  Additionally, Plaintiff received an injection in her left hip on June 16, 2015, and injections for her trigger finger on August 19, 2015 and December 21, 2015.  (AR 531, 594, 617.)  The ALJ failed to recognize that Plaintiff had been treated with more than just medication and physical therapy.  The Court finds that this is not a clear and convincing reason to reject Plaintiff's symptom testimony.

The ALJ also found that Plaintiff's statement that she falls a lot is not supported by the record.  An adverse credibility finding can be supported by contradictions in the claimant's testimony.  Robbins., 466 F.3d at 884; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997), as amended on reh'g (Sept. 17, 1997).

Plaintiff did testify at the hearing that she fell a lot and the ALJ noted that on on March 19, 2016, Plaintiff denied having fallen in the last year.  However, on September 3, 2016, Plaintiff reported that she had generalized weakness that had progressed to the point where she occasionally fell down.  (AR 807, 867.)  She reported that her left leg had been weak and giving out since she had injections in her back three months prior.  (AR 865.)  Review of the record does not support the ALJ's finding that Plaintiff's statement that she falls down a lot is not supported by the medical record.  This is not a clear and convincing reason to reject Plaintiff's symptom testimony.

Finally, the ALJ found that Plaintiff's symptom complaints are not consistent with the objective findings in the medical record.  However, the ALJ cannot discredit Plaintiff's pain testimony solely because it is found not to be supported by the objective medical evidence.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991).  As discussed above, the Court finds that the other reasons that the ALJ gave for discrediting Plaintiff's testimony are not clear and

convincing reasons supported by substantial evidence. Therefore, even if there is substantial evidence to support the ALJ's finding that the clinical evaluations and objective evidence are inconsistent with Plaintiff's complaints, the ALJ could not properly reject Plaintiff's testimony on this reason alone. See Bunnell, 947 F.2d at 347.

The Court does not find that the error in addressing Plaintiff's symptom testimony is harmless. Were the ALJ to credit the testimony, he could find that Plaintiff was limited to less than frequent or occasional use of the upper extremities. However, as the ALJ noted throughout the opinion, Plaintiff's allegations regarding the severity of her upper extremity impairments lack objective medical support in the record. Therefore, the Court finds that this action shall be remanded for the ALJ to reconsider Plaintiff's symptom testimony. If on remand, in addition to inconsistencies with objective evidence and clinical evaluations, the ALJ provides other clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's testimony then the inconsistencies with objective evidence and clinical evaluations may be a proper reason for rejecting Plaintiff's credibility. If the ALJ continues to find Plaintiff's symptom testimony not fully credible he is required to provide specific clear and convincing reasons to find the testimony not credible and must identify the testimony that is not credible and the evidence that undermines Plaintiff's complaints.

### D. Past Relevant Work

Plaintiff argues that the ALJ erred by finding that she is able to perform her past relevant work because the residual functional capacity did not contain all of her hand limitations. Plaintiff argues that the position of billing clerk would require the constant use of her hands and the VE incorrectly stated that the job would require frequent hand use. Further, Plaintiff argues that the VE's failed to adequately explain the conflict with the DOT in finding that Plaintiff's job could still be performed if she was limited to occasional use of her left hand.

Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff is able to perform her past relevant work. Defendant contends that the ALJ was not required to proffer a hypothetical for the limitation to occasional use of the upper extremities because he found the limitation unsupported by the record. But Defendant argues that even if the ALJ erred

by finding that Plaintiff was able to frequently use her left hand and arm, any error would be harmless as the VE opined that Plaintiff would be able to perform her past relevant work if she was limited to occasional use of the upper left extremity.

Plaintiff replies that Plaintiff's job clearly requires her to use her hands constantly during the day which conflicts with the VE's testimony. Plaintiff contends that the reasons that the VE provided to explain the conflict with the DOT are not adequate and reasonable to explain the discrepancy.

At Step Four, the ALJ assesses the claimant's "residual functional capacity," which is defined as the most that a claimant can do despite the "physical and mental limitations" caused by her impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). The ALJ first uses the residual functional capacity to determine if the claimant is able to perform past relevant work. 20 C.F.R. § 404.1545(a)(5)(i). The claimant bears the burden of proof at step four to prove that she cannot perform her past relevant work, but the ALJ still has a duty to make the requisite factual findings to support the conclusion. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001); Carmickle, 533 F.3d at 1166. The ALJ does this by looking at the claimant's residual functional capacity and the physical and mental demands of the past relevant work. Pinto, 249 F.3d at 844. To be able to perform past relevant work, the claimant must be able to perform "[t]he actual functional demands and job duties of a particular past relevant job;" or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." Id. "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." Id.

Defendant argues that assuming the ALJ erred such error would be harmless as the VE opined that Plaintiff could perform her past relevant work even if she were limited to occasional use of the left upper extremity. However, since the ALJ failed to identify clear and convincing reasons to reject Plaintiff's symptom testimony, the extent of Plaintiff's ability to perform activity with the upper extremities has not been established. Accordingly, this action must be remanded for the ALJ to determine the extent of Plaintiff's upper left extremity limitations.

Upon remand, should the ALJ find that Plaintiff is capable of occasional use of the upper left extremity, the VE should address how this conflict with the DOT would allow her to do her past relevant work or identify other jobs that Plaintiff could perform given the limitation.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ erred in failing to consider Plaintiff's trigger finger diagnosis and treatment and in failing to set forth clear and convincing reasons to reject Plaintiff's symptom testimony. Additionally, the ALJ did not provide specific and legitimate reasons supported by the record for the weight provided to the physician opinions. Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Deborah Martinez and against Defendant Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **July 9, 2019**

UNITED STATES MAGISTRATE JUDGE